OPINION
{¶ 1} Appellant, Angela Thomas ("Angela"), appeals the judgment of the Lake County Common Pleas Court, Juvenile Division, which granted permanent custody of her daughter, Grace D. King ("Grace"), to the Lake County Department of Job and Family Services ("the department"). We affirm.
 {¶ 2} Grace was born July 23, 2002. On July 24, 2002, the department filed an abuse complaint and a motion for temporary emergency custody. This motion alleged that both Angela and Grace tested positive for cocaine at the time of Grace's birth; that Angela had used cocaine and engaged in acts of prostitution during her pregnancy; and that Angela would be arrested on two outstanding warrants when she was released from the hospital.
 {¶ 3} The trial court held an emergency hearing on July 26, 2002, and awarded the department emergency temporary custody. The trial court also set a seventy-two hour hearing.
 {¶ 4} The trial court conducted the seventy-two hour hearing on July 29, 2002 and continued temporary custody with the department.
 {¶ 5} On August 7, 2002 the trial court adopted a case plan requiring Angela to secure stable housing, maintain a safe and stable home environment, secure and maintain employment, learn parenting skills, and refrain from drug use.
 {¶ 6} On August 19, 2002, Jonathan King, Sr., ("Jonathan"), the putative father, was joined as a party. Angela moved for genetic testing of Jonathan and he was established to be Grace's father.
 {¶ 7} On January 21, 2003, an amended case plan was adopted to include Jonathan. This case plan required Angela to, among other things, remain drug and alcohol free and to remove herself from people who would tempt her to use drugs or alcohol; complete a drug and alcohol assessment and adhere to all treatment recommendations; secure and maintain a safe and stable home environment; learn appropriate parenting skills; obtain and maintain employment; and complete a psychological evaluation.
 {¶ 8} An amended case plan was filed February 11, 2003, to add additional requirements for Jonathan. The court subsequently adopted this case plan.
 {¶ 9} On April 30, 2003, Traci Page, Jonathan's sister and Grace's paternal aunt, was added as a party to the case and to the case plan. She was subsequently dropped from the case plan after she indicated that she did not wish to pursue custody of Grace.
 {¶ 10} A further disposition hearing was held on Angela's request for return of custody. By judgment entry filed July 7, 2003, the trial court found that:
 {¶ 11} "[Angela's] present living conditions are unknown. [Angela] has not availed herself of the assistance of the Lake County Department of Job and Family Services nor has she kept them apprised of her whereabouts or case plan compliance. Additionally, there is still concern regarding [Angela's] ability to maintain sobriety."
 {¶ 12} Based upon these findings, the court continued temporary custody with the department.
 {¶ 13} On July 27, 2003, the department moved for permanent custody. On December 5, 2003, the guardian ad litem filed a report in which he concluded that it was in Grace's best interest for the court to grant the department's motion for permanent custody. On December 18, 2003, following a hearing, the trial court granted the department's motion for permanent custody.
 {¶ 14} Angela appeals from the trial court's judgment raising one assignment of error: "The trial court erred in granting the motion for permanent custody as the court's findings are not supported by clear and convincing evidence."[1]
 {¶ 15} R.C. 2151.414(B)(1) sets forth the applicable standard for determining the motion for permanent custody in the instant case. This section provides:
 {¶ 16} "* * * the court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 17} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 18} "(b) The child is abandoned.
 {¶ 19} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 20} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C.2151.414(B)(1)(a)-(d).
 {¶ 21} To determine the child's best interest, the trial court must consider all relevant factors, including but not limited to:
 {¶ 22} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 23} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 24} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 25} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 26} "(5) Whether any of the factors in divisions (E)(7) to (11)² of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
 {¶ 27} R.C. 2151.414(B) establishes a two-pronged test the juvenile court must apply when determining a motion for permanent custody. In practice, the juvenile court will usually determine whether one of the four circumstances delineated in R.C.2151.414(B)(1)(a) through (d) exists before proceeding to determine the child's best interest. In re Funk, 11th Dist. Nos. 2002-P-0035 and 2002-P-0036, 2002-Ohio-4958, ¶ 36.
 {¶ 28} Clear and convincing evidence is more than a mere preponderance; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. We will not reverse an award of permanent custody to an agency if clear and convincing evidence supports the judgment. Id., at ¶ 39.
 {¶ 29} Angela presents three arguments in support of her assignment of error. She first argues that the trial court erred in concluding that the department made reasonable case planning and diligent efforts to return Grace to her. We disagree.
 {¶ 30} The record demonstrates that Angela has a severe cocaine addiction and was incarcerated three times on drug charges following Grace's birth. As noted, both Angela and Grace tested positive for cocaine at the time of Grace's birth. Throughout the course of these proceedings, Angela resided primarily at the county jail, at her parent's house while under house arrest, or at drug treatment facilities. Angela never maintained steady employment.
 {¶ 31} The case plans adopted by the court addressed each of these issues; however, in spite of her efforts, Angela never successfully completed the goals of the case plan. Her failures cannot be attributed to a lack of reasonable case planning by the department.
 {¶ 32} While Grace was placed in a dual certified foster-adopt home, this in and of itself does not establish that the department failed to work toward reunification. The record establishes that the department worked diligently toward reunification; however, it was an up-hill battle.
 {¶ 33} The department provided Angela with more than normal opportunities for visitation; however, Angela failed to appear for more than thirty hours of visitation in the seventeen months Grace was in the department's custody. In fact, after Angela fled the hospital the day following Grace's birth to avoid arrest, she spent only seventeen total hours with Grace. Further, the department provided Angela with services and opportunities to participate in programs designed to lead to reunification. Angela either failed to avail herself of these services or failed to complete the programs.
 {¶ 34} Thus, we conclude that the trial court's finding that the department made reasonable case plans and diligent efforts to reunify Angela and Grace was supported by clear and convincing evidence.
 {¶ 35} Angela next argues that the trial court erred in concluding that she failed to avail herself of the necessary services and visitation opportunities. In support of her contention, Angela asserts that she was not given sufficient time to resolve the issue of her drug addiction. We find no merit in this argument.
 {¶ 36} The record establishes that Angela completed the jail portion of the drug treatment program three times. However, upon her release, she always failed to complete the aftercare program and relapsed. This pattern continued over a course of almost seventeen months.
 {¶ 37} While we recognize that recovery from drug addiction can be a long, slow process, the record in this case establishes that Angela made little progress. Therefore, the trial court correctly concluded that there was little chance Angela would make the significant progress necessary before she was ready to parent Grace. This is especially so given the evidence that Grace would suffer psychological damage if the strong bond she had developed with her foster parents was subsequently broken. In other words, it was not in Grace's best interest for the court to wait and see when, if ever, Angela would overcome her addiction. Therefore, we conclude that clear and convincing evidence supported the trial court's finding that Angela failed to avail herself of the services and visitation opportunities presented to her.
 {¶ 38} Finally, Angela argues that the trial court erroneously concluded that a legally secure permanent placement could not be achieved without a grant of permanent custody. We disagree.
 {¶ 39} While Traci Page, Grace's paternal aunt, initially expressed some interest in custody, she later indicated that she was unwilling to pursue custody. No other relative pursued custody despite the department's efforts. Nothing in the record would support a determination that Angela would be ready to parent Grace in the foreseeable future. Jonathan had never had any contact with Grace and refused to work on the case plan. Therefore, clear and convincing evidence supported the trial court's determination that a legally secure permanent placement could be achieved only by granting the department's motion for permanent custody.
 {¶ 40} For the foregoing reasons the judgment of the Lake County Common Pleas Court, Juvenile Division, is affirmed.
Christley, J., Grendell, J., concur.
[1] Jonathan did not appeal the trial court's judgment.
{¶ a} R.C. 2151.414(E)(7)-(11) state:
{¶ b} "(7) The parent has been convicted of or pleaded guilty to one of the following:
{¶ c} "(a) An offense under section 2903.01, 2903.02, or2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
{¶ d} "(b) An offense under section 2903.11, 2903.12, or2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
{¶ e} "(c) An offense under division (B)(2) of section2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
{¶ f} "(d) An offense under section 2907.02, 2907.03,2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
{¶ g} "(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
{¶ h} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
{¶ i} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
{¶ j} "(10) The parent has abandoned the child.
{¶ k} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or2151.415 of the Revised Code with respect to a sibling of the child.